UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| K. PETROLEUM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6:22-CV-05-CHB |
| | ) | |
| v. | ) | |
| | ) | |
| BERNICE HUBACEK, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Plaintiff K. Petroleum, Inc.'s Motion for Partial Summary Judgment. [R. 19]. Defendant Bernice Hubacek has responded in opposition [R. 20], and K. Petroleum has replied [R. 21]. For the reasons that follow, the Court will grant K. Petroleum's motion in part and deny it in part.

## I.   BACKGROUND

This action arises out of Plaintiff K. Petroleum, Inc.'s operation of certain oil and gas wells, pipelines, and equipment on property owned by Defendant Bernice Hubacek in Clay County, Kentucky. [R. 1 (Complaint), ¶ 7]. On October 9, 2000, K. Petroleum entered into a lease to operate the wells with Randal and Debra Allen, the previous owners of Hubacek's land. *Id.*; [R. 19, p. 1]; *see also* [R. 19-1 (Disclosure Exhibit 7, Oil and Gas Lease), pp. 60–62]. The Lease grants K. Petroleum drilling and extraction rights for as long as the wells on the property are producing oil and gas "in paying quantities." [R. 19-1 (Disclosure Exhibit 7, Oil and Gas Lease), p. 61].

In its Complaint, K. Petroleum alleges Hubacek breached the terms of the Lease by ousting or "attempt[ing] to wrongfully oust [K. Petroleum] and its employees from the property on which

- 1 -

[its] natural gas well, pipelines, and equipment are located[.]" [R. 1 (Complaint), ¶ 8(a), (d)].[1] K. Petroleum's Complaint further alleges that Hubacek "has prevented [it] from operating and servicing the subject natural gas wells, pipelines, and equipment," and that Hubacek has dangerously interfered with the wells, pipelines, and equipment by "illegally convert[ing] to her own use natural gas not owned by her." *Id.* at ¶¶ 8(b), (c); 11. Lastly, K. Petroleum's Complaint alleges that Hubacek has prevented K. Petroleum from ensuring the subject wells are compliant with regulations promulgated by the Kentucky Energy and Environmental Cabinet. *Id.* at ¶ 12. K. Petroleum seeks compensatory damages and declaratory and injunctive relief. *See id.* at ¶¶ A–C. In addition, because K. Petroleum alleges Hubacek's actions were done "with ill will, malice, fraud, reckless disregard, and gross negligence," it also seeks punitive damages. *Id.* at ¶ 10.

In her Answer and Counterclaim, Hubacek denies K. Petroleum's allegations, argues that K. Petroleum is not entitled to punitive damages (or any relief), and sets forth counterclaims alleging that K. Petroleum breached and/or unreasonably exercised its rights under the lease by "fail[ing] and refus[ing] to contact the defendant when it is necessary for K. Petroleum, Inc., to enter the defendant's property," by failing to bury a black natural gas line it operates on the property and failing to remove a yellow pipeline, and by "fail[ing] to maintain the access road it utilizes in going to and from its well and equipment." *Id.* at p. 3, ¶¶ 1–5.

The parties have exchanged discovery, and K. Petroleum now moves for partial summary judgment "as to the leasehold interest," on its ouster and conversion claims, and on its claimed

---

[1] For clarity, the Court notes that K. Petroleum, in its Complaint, and Hubacek, in her Counterclaim, fail to clearly label their causes of action, via counts or otherwise. For its part, K. Petroleum's Complaint provides a narrative section labeled "The Controversy," which then includes numbered paragraphs, none of which clearly name the causes of action alleged. *See generally* [R. 1]. Similarly, Hubacek's Counterclaim includes numbered paragraphs that offer various factual allegations but largely fail to clearly articulate any causes of action. *See generally* [R. 8]. For this reason, the Court, throughout this order, refers to the parties' claims by their descriptions (i.e., "K. Petroleum's conversion claim," and "Hubacek's counterclaim with respect to the yellow pipeline").

damages and request for permanent injunctive relief. [R. 19, pp. 4–19]. In response, Hubacek suggests K. Petroleum's request for injunctive relief is now moot, that it has not conclusively established its ouster or conversion claim as a matter of law, and that, even if it had, its damages are speculative. [R. 21, pp. 2–8].

## II.   STANDARD OF REVIEW

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining a motion for summary judgment, a court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Lindsay v. Yates,* 578 F.3d 407, 414 (6th Cir. 2009). The court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 265 (1986).

The initial burden of establishing no genuine dispute of material fact rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). If the moving party satisfies this burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Id.* at 324. Where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may treat that fact as undisputed. Fed. R. Civ. P. 56(e).

A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson*, 477 U.S. at 248. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual

disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. Ultimately, if the record, taken as a whole, could not lead the trier of fact to find for the nonmoving party, then there is no genuine issue of material fact and summary judgment is appropriate. *Matsushita Elec.*, 475 U.S. at 587 (citation omitted).

## III. ANALYSIS

As the Court understands the parties' briefing, K. Petroleum has moved for summary judgment on its declaratory judgment claim "as to the leasehold interest," on its ouster and conversion claims, and on its claimed damages and request for permanent injunctive relief. [R. 19, pp. 4–19]. As a preliminary matter, however, several of the issues originally raised by K. Petroleum are now moot, either by agreement of the parties or by K. Petroleum's voluntary abandonment. The Court thus finds it helpful to first discuss those issues that are no longer disputed or that have been potentially rendered moot.

### A. Undisputed Issues

First, the parties have reached an agreement on K. Petroleum's request for injunctive relief. In its summary judgment motion, K. Petroleum seeks "injunctive relief allowing reasonable access with a separate lock or key to the existing lock" on Hubacek's fence. [R. 19, p. 19]. In her response, Hubacek explains, "[K. Petroleum's] claim [for] injunctive relief is now moot. Defendant Hubacek has agreed to allow [K. Petroleum] to have its own locks on her chains so as to permit access to [K. Petroleum] when needed." [R. 20, pp. 7–8]. Hubacek represents that counsel for the parties agreed to this resolution via email after K. Petroleum's summary judgment motion was filed, *see* [R. 20-7], and K. Petroleum's reply does not state otherwise (in fact, it makes no mention of its original request for injunctive relief). Accordingly, with the parties having independently agreed

upon a resolution of the issue, the Court will deny K. Petroleum's request for injunctive relief as moot.

Second, in its motion, K. Petroleum notes that its claims "as to damages caused by putting [it] out of regulatory compliance have essentially been rendered moot by [K. Petroleum] now being allowed access for production of natural gas from the wells." [R. 19, p. 19]. Based on this representation, the Court will consider those claims voluntarily dismissed.

In addition, Hubacek does not contest K. Petroleum's entitlement to summary judgment on her Counterclaim concerning the yellow pipeline K. Petroleum allegedly failed to remove. [R. 19, p. 20]. For its part, K. Petroleum notes that a formal inspection of Hubacek's property revealed that the yellow pipeline was "connected to natural gas production equipment on other property, in Jackson County, Kentucky, which equipment was not in any way associated with [K. Petroleum]." *Id.*; *see also* [R. 19-6 (Deposition of Harold M. Frost), p. 24]; [R. 19-7 (Deposition of Junior Hill), p. 8]. K. Petroleum thus suggests "there is no evidence that [K. Petroleum] laid or ever utilized" the yellow pipeline, and it disclaims any obligation to remove it. [R. 19, p. 20]. On this issue, Hubacek fails to offer any responsive argument. As previously stated, where a party "fails to properly address another party's assertion of fact," the Court may treat that fact as undisputed. Fed. R. Civ. P. 56(e); *see also Palma v. Johns*, 27 F.4th 419, 429 n.1 (6th Cir. 2022) ("Generally, at the summary judgment stage, the non-moving party can forfeit an argument if they fail to respond to the *moving party's arguments*.") (emphasis in original); *Cunningham v. Tenn. Cancer Specialists, PLLC*, 957 F. Supp. 2d 899, 921 (E.D. Tenn. 2013) ("It is well understood that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (cleaned up). Because the undisputed evidence supports K. Petroleum's position that

it does not own or operate the yellow pipeline, and because Hubacek has failed to present any evidence or argument to the contrary, the Court will grant summary judgment to K. Petroleum on Hubacek's Counterclaim with respect to that issue.

### B.   Potential Mootness of K. Petroleum's Claim for Declaratory Relief

Next, K. Petroleum moves for summary judgment on its request for a declaratory judgment "as to the leasehold interest," since Hubacek "does not dispute that she owns the subject land," nor does she "dispute [K. Petroleum's] leasehold rights." [R. 19, p. 4]. Indeed, Hubacek has acknowledged several times throughout this litigation that she owns the subject property, and that she now understands K. Petroleum has a valid leasehold interest in that property. *See* [R. 8 (Answer and Counterclaim), p. 1, ¶ 4] ("[K. Petroleum] obtained an Oil and Gas Lease from Randal Allen and Debra Allen, and . . .  the defendant Bernice Hubacek owns the real property[.]"); [R. 20-1 (Deposition of Defendant Hubacek), pp. 30–31] ("I had a paper that said [the lease] had expired and that's what I was going by . . . It was a November 17, 2000, letter that said it was expired. . . . [A]fter that I found another one or actually I think [K. Petroleum] found the other one that said it was not expired, so I guess when it expired they renewed it right away, but I didn't have a copy of the renewal.").

Hubacek explains that her previous actions were based on her "mistaken belief that the oil and gas lease had terminated and [] was no longer in effect." [R. 20, p. 1]; *see also* [R. 20-1 (Deposition of Defendant Hubacek), p. 34] ([Hubacek:] "I just thought the paper that I had that said [the lease] was expired, that was it." Q: "But now you understand that production does keep [the lease] in place?" A: "Yes." Q: "And you don't have any objection to any of the employees of [K. Petroleum] coming to inspect the meters or the wells--" A: "No."). Since curing her mistaken belief (meaning, since learning that K Petroleum does still have a valid lease), Hubacek has

allowed K. Petroleum access to the property, apparently without issue, at least since March of 2023. *See* [R. 19, p. 6] ("This exclusion from the property continued until March 8, 2023[.]"); [R. 21, p. 3] ("[T]his lawsuit was filed at a time when Defendant, Bernice Hubacek, was denying [K. Petroleum's] rights to produce the natural gas on the property[.]"); *see also* [R. 19-7 (Deposition of Junior Hill), pp. 8–9] (discussing K. Petroleum representatives' visit to Hubacek's property on March 8, 2023 to "check[] the wells"); [R. 19-6 (Deposition of Harold M. Frost), p. 22–24] (discussing same visit and explaining they had the "meters calibrated"). Again, Hubacek has since "agreed to allow [K. Petroleum] to have its own locks on her chains so as to permit access to [K. Petroleum] when needed." [R. 20, p. 4]; *see also* [R. 20-1 (Deposition of Defendant Hubacek), pp. 12–14] (Hubacek explaining that she asked K. Petroleum's representative "several times" to provide advance notice, who "always said yes and then just didn't call. They'd just show up"); *id.* at 19 ("That's all I wanted is just notification."); *id.* at 31 ("As long as I know they're coming, I'll open the gate.").

Given these concessions, and the fact that K. Petroleum has had unfettered access to the property pursuant to the terms of the lease since March of 2023, it appears K. Petroleum's request for a declaratory judgment on its leasehold interest is no longer justiciable. *See Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 465 F. Supp. 2d 827, 831 (N.D. Ohio 2006), aff'd, 512 F.3d 800 (6th Cir. 2008) ("To issue a declaratory judgment, the Court must be faced with 'a real and substantial controversy[.]'"); *Thompson v. DeWine*, 7 F.4th 521, 524 (6th Cir. 2021) (citations omitted) ("To determine whether a request for declaratory relief is moot, we ask 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"). At this juncture, Hubacek does not dispute that K. Petroleum's oil and

gas lease is valid and ongoing, and K. Petroleum now has full access to the subject property through its own locks on Hubacek's fence.

Further, "a claim for declaratory relief becomes moot when the relief would not affect the behavior of the defendant toward the plaintiff." *Audubon of Kansas, Inc. v. United States Dep't of Interior*, 67 F.4th 1093, 1102 (10th Cir. 2023) (internal citation and quotation marks omitted). On this record, the Court cannot sense how the issuance of a declaratory judgment would affect the behavior of Hubacek, who has acknowledged K. Petroleum's leasehold interest in her property, allowed it to keep its own lock on her fence, and has granted it access to the property since March of 2023.

Finally, when determining the mootness of a claim for declaratory relief, "courts distinguish between allegations of past versus ongoing or future harm." *Alexander v. Miller*, No. 3:20-CV-00044-GFVT-EBA, 2023 WL 6439887, at *5 (E.D. Ky. Sept. 29, 2023) (citing *Kanuszewski v. Mich. HHS*, 927 F.3d 396, 406 (6th Cir. 2019)). "'Past harm allows a plaintiff to seek damages, but it does not entitle a plaintiff to seek injunctive or declaratory relief.'" *Id.* (quoting *Kanuszewski*, 927 F.3d at 406). Again, on this record, the Court perceives no ongoing or future harm with respect to Hubacek's alleged encumbrance of K. Petroleum's leasehold rights. Rather, K. Petroleum reports that it has full to access Hubacek's property and has expressed no concern that Hubacek will exclude it from the property in the future.

The Court will therefore deny K. Petroleum's motion for summary judgment on its declaratory judgment claim without prejudice. If, in light of the above-quoted authority, K. Petroleum continues to seek declaratory relief, it may file a renewed motion supported by relevant authority and discussing its entitlement to a declaratory judgment within twenty-one (21) days of entry of this order. Should it choose to do so, K. Petroleum must discuss the factors outlined above,

- 8 -

including how the facts of this case show that there remains "a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment," *Thompson*, 7 F.4th at 524; explain how a declaratory judgment by this Court would "affect the behavior of [Hubacek] toward [K. Petroleum]," *Audubon of Kansas*, 67 F.4th at 1102; and discuss why it is entitled to declaratory relief, as opposed to damages for potential past harm, *Alexander*, 2023 WL 6439887, at *5. Standard response and reply times shall apply.

### C.  Live Disputes

#### i.    Ouster

Turning, then, to the issues that remain in dispute, K. Petroleum first argues it is entitled to summary judgment on its ouster claim. [R. 19, pp. 5–7]. Hubacek positions, however, that whether her actions "amounted to an ouster of plaintiff [K. Petroleum]" must be resolved by a factfinder. [R. 20, p. 8]. The Court agrees with Hubacek.

Ouster is "a wrongful dispossession or exclusion of a party from real property who is entitled to be in possession thereof, and must necessarily be accompanied with an intent to effect such exclusion." *Crawford v. Wiedemann*, 186 S.W. 509, 512 (Ky. 1916) (citation omitted); *see also* Ouster of Cotenant, 2 Tiffany Real Prop. § 449 (3d ed.) ("The refusal to let a cotenant into possession, with knowledge of his claim of title, accompanied by a denial thereof, constitutes an ouster."). "An 'ouster' can only be effectuated by proving the same elements necessary for adverse possession; that is, the 'possession must be of such an actual, open, notorious, exclusive and hostile character as amounts to an ouster of the other tenants.'" *Creech v. Harlan-Cumberland Coal Co.*, LLC, No. 2018-CA-001750-MR, 2020 WL 1815996, at *2 (Ky. Ct. App. Apr. 10, 2020) (quoting *White Log Jellico Coal Co. v. Zipp*, 32 S.W.3d 92, 96 (Ky. Ct. App. 2000)); *see also Charles Riley, Jr. Revocable Tr. V. Venice Beach Citizens Ass'n, Inc.*, No. 1064, 2023 WL 369752, at *6 (Md.

Ct. Spec. App. Jan. 24, 2023) (citation omitted) ("Ouster is the actual turning out or keeping excluded the party entitled to the possession of any real property.").

The elements of ouster can be demonstrated "by express notice or such overt acts of hostility that a reasonably prudent person would be apprised of the denial of his rights." *Hoagland v. Fish*, 238 S.W.2d 133, 136 (Ky. 1951). In general, "whether there has or not been an ouster, is a question of fact which it is the province of the jury to decide." *Gill v. Fauntleroy's Heirs*, 47 Ky. 177, 186 (1847); *see also Dickerson v. Stephens*, No. 2006-CA-000407-MR, 2007 WL 2284790, at *6 (Ky. Ct. App. Aug. 10, 2007) (citing *MCI Mining Corp. v. Stacy*, 785 S.W.2d 491, 495 (Ky. App. 1989)) ("As a general rule, the question of whether an ouster has occurred is an issue of fact.").

As an initial matter, the Court observes that K. Petroleum's five-paragraph argument for summary judgment on this claim is insufficiently developed, and K. Petroleum has failed to carry its burden, as the movant, of establishing no genuine dispute of material fact. *See Celotex*, 477 U.S. at 323 (explaining that the moving party must "inform[] the district court of the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact"). Indeed, K. Petroleum cites only one ouster case, *see* [R. 19, p. 7] (citing *Hoagland v. Fish*, 238 S.W.2d 133, 136 (Ky. 1951)), but that case actually concerns adverse possession, and defines ouster only as part of the court's broader discussion of that issue. Indeed, K. Petroleum fails to even outline—much less engage with—the elements of ouster. This alone would be reason to deny summary judgment on K. Petroleum's ouster claim. *See United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some

- 10 -

effort at developed argumentation, are deemed waived."); *Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) (observing that "[w]e consider issues not fully developed and argued to be waived").

Aside from the single adverse possession case defining ouster, K. Petroleum cites two other cases outlining the black letter law concerning the correlative rights of a dominant and servient estate of an easement. *See* [R. 19, pp. 5–6] (citing *Central Kentucky Natural Gas Co. v. Huls*, 241 S.W.2d 986, 987 (Ky. 1951); *Higdon v. Kentucky Gas Transmission Corp.*, 448 S.W.2d 655, 657 (Ky. 1969)). And K. Petroleum is correct that these cases stand for the propositions that "the dominant and servient owners have correlative rights and duties which *neither* may unreasonably exercise to the injury of the other," and that *neither* may act in a way that would "materially interfere with" the other's rights to use the subject property. *Id.* (emphasis added). But K. Petroleum fails to draw any real connection between these cases and its ouster claim against Hubacek.

All this to say, K. Petroleum has not sufficiently developed its summary judgment motion, and none of the cases it cites clearly supports its position on this factual record, as outlined below. For that reason, even without reaching the merits, the Court could deny K. Petroleum's motion with respect to its ouster claim. *See Celotex*, 477 U.S. at 323; *Layne*, 192 F.3d at 566; *Brindley*, 61 F.3d at 509. In any event, having thoroughly considered the record in this case and Kentucky law on ouster, the Court concludes that genuine issues of material fact concerning (1) whether Hubacek's actions constituted a "wrongful dispossession or exclusion" of K. Petroleum, and (2) whether Hubacek held the "intent to effect such exclusion," preclude summary judgment on K. Petroleum's ouster claim. *Crawford*, 186 S.W. at 512; *see also Dickerson*, 2007 WL 2284790, at *6.

### a. Wrongful Dispossession

As stated, an ouster is: (1) "a wrongful dispossession or exclusion of a party from real property who is entitled to be in possession thereof," accompanied by (2) "an intent to effect such exclusion." *Crawford*, 186 S.W. at 512 (citation omitted); *see also Creech*, 2020 WL 1815996, at *2 ("An 'ouster' can only be effectuated by proving the same elements necessary for adverse possession; that is, the 'possession must be of such an actual, open, notorious, exclusive and hostile character as amounts to an ouster of the other tenants.'"). First, with respect to Hubacek's alleged exclusion of K. Petroleum, K. Petroleum obtained its leasehold rights by virtue of its Oil and Gas Lease with Randal and Debra Allen on October 9, 2000. [R. 19-1 (Disclosure Exhibit 7, Oil and Gas Lease), pp. 60–62]. The Lease granted K. Petroleum drilling and extraction rights for as long as the wells on the property are producing oil and gas "in paying quantities." *Id.* at 61. Hubacek has owned the subject property since March of 2019. *See* [R. 19-1 (Disclosure Exhibit 6, General Warranty Deed), pp. 53–59].

According to K. Petroleum, Hubacek prevented it from fully exercising its rights under the Lease such that K. Petroleum was either constructively or actually ousted from the subject property until March 8, 2023. [R. 19, p. 7].  In support of its ouster claim, K. Petroleum points to an April 21, 2021, letter from K. Petroleum to Hubacek, whereby K. Petroleum informed Hubacek of its leasehold interest and sought access to the property. *See* [19-1 (Disclosure Exhibit 1), p. 41]. In that letter, K. Petroleum instructed Hubacek to contact its employee, Mike Frost, via telephone to "let him know he now has the necessary access to perform his duties." *Id.* On May 4, 2021, Hubacek sent a responsive letter to K. Petroleum, stating,

> Mr. Frost did not answer Mrs Hubacek's call as requested in your letter nor did Mr. Frost respond to the message left.
> . . .

> According to all legal and/or legitimate documentation and records, the lease between K. Petroleum and the landowner (Bernice Bajda-Hubacek) of the Clay county wells mentioned in your letter had expired within its own terms on November 17, in the year 2000. There are no lawful recordings of a new lease. Please refrain from any trespass or attempt thereof. As stated by Mrs Hubacek your agents may gain cordial access with an appointment via email to and from Theresa Jonas who contacted Mrs Hubacek by your office previously on numerous occasions.

[R. 19-1 (Disclosure Exhibit 8), p. 63]. When asked about this letter during her deposition, Hubacek explained, "I wrote that in just to figure, you know, it would be easier for [Theresa Jonas] to contact me, but it doesn't matter how they contact me. They can call. They can email. As long as I know they're coming, I'll open the gate." [R. 20-1 (Deposition of Defendant Hubacek), p. 31]. Based on this letter, a reasonable jury could conclude that Hubacek attempted to contact Frost with no response, and although, as of May 2021, Hubacek mistakenly believed the Lease had expired, she nonetheless stated a clear willingness to allow "cordial access" to the property "with an appointment." [R. 19-1 (Disclosure Exhibit 8), p. 63] (emphasis added).

On May 28, 2021, counsel for K. Petroleum sent Hubacek another letter refuting that the Lease had expired and emphasizing "[t]hat K. Petroleum, Inc., has been locked out of access to the well is illegal and dangerous." [R. 19-1 (Disclosure Exhibit 9), p. 64]. However, there is evidence indicating that, both before and after this exchange of letters, K. Petroleum was not "locked out" of the property entirely, and that Hubacek worked with K. Petroleum to provide at least some access. K. Petroleum's field supervisor, Harold Frost,[2] testified during his deposition that "since Ms. Hubacek took ownership back in March 2019 . . . we've never been able to get in, on *except for a few times*." [R. 19-6 (Deposition of Harold M. Frost), p. 16] (emphasis added). In its summary judgment motion, K. Petroleum also states, "On one occasion [in approximately

---

[2] Although Frost does not state his full name during his deposition, it appears, given the content of his testimony, that deponent Harold M. Frost is the same "Mike Frost" referred to in the exchange of letters between K. Petroleum and Hubacek.

2020], [K. Petroleum] was allowed access to the property and found the natural gas flow from wells turned off (via a simple valve)" and, "Later, [K. Petroleum] was allowed access to check for a reported leak." [R. 19, p. 6] (citing [R. 19-6 (Deposition of Harold M. Frost), p. 18]; [R. 19-7 (Deposition of Junior Hill), pp. 10–11]). Still, K. Petroleum claims that "[a]fter monthly visits and being excluded by a locked gate, [K. Petroleum] eventually stopped attempting to access the property." *Id.*

Moreover, during her deposition, Hubacek testified that K. Petroleum representatives "come in to check the wells every so often and would drive to the different wells using" a trail on the property. [R. 20-1 (Deposition of Defendant Hubacek), p. 21]. Hubacek explained that, shortly after she purchased the property, her "introduction to [K. Petroleum]" occurred when "[f]our truckloads of people showed up and got out and said they were from K. Petroleum and started wandering all over [her] property." *Id.* at 26. There is no evidence or allegation that Hubacek asked the K. Petroleum representatives to leave or in any way impeded their access during that initial visit. In fact, early on, Hubacek explains she "was letting them in and then finally [] said no, no," and began requesting advance notice, "because [she'd] be in the middle of doing something and [would] have to drop everything to open the gate and let them in[.]" *Id.* at 13; *see also id.* at 12–14 (Hubacek explaining that she asked K. Petroleum's representative "several times" to provide advance notice, who "always said yes and then just didn't call. They'd just show up"); *id.* at 19 ("That's all I wanted is just notification."); *id.* at 31 ("As long as I know they're coming, I'll open the gate.").

And, according to Hubacek, K. Petroleum was amenable at times to notifying her before attempting to access the property. During her deposition, Hubacek testified that Mike Frost "and some of the employees that came to [her] gate" assured her that they would let her know before

coming to the property yet continued to show up unannounced. [R. 20-1 (Deposition of Defendant Hubacek), p. 13]. Hubacek also offers that on October 21, 2022, "arrangements were made to meet field representatives of [K. Petroleum] at the property for inspection of the wells . . . and counsel and defendant Hubacek waited at the property approximately two hours and no one appeared." [R. 20, p. 6]. In addition, Harold Frost even testified during his deposition that before entering Hubacek's property, he would "usually [] get an e-mail from Scott [Webster], saying when we can go in there, now," and explained that they previously "didn't have to do any of that" before entering the property. [R. 19-6 (Deposition of Harold M. Frost), p. 11]. In other words, Frost acknowledged that, although it is not common practice for K. Petroleum to seek permission before entering property on which it services wells, that was often their practice in Hubacek's case.

In *Dickerson v. Stephens*, the Kentucky Court of Appeals considered a dispute between a landowner and other lot owners in a subdivision, whereby the landowner purchased a lot that included certain restrictive covenants, including that the lot be used as a park. 2007 WL 2284790, at *2. The other lot owners in the subdivision in which the park was located benefitted from the restrictive covenant in that they were entitled to use the park, and the subdivision owners brought claims of ouster after the lot owner constructed a fence on one portion of the lot and placed "No trespassing" signs "at the remaining access points to the lot." *Id.* at *6. The Kentucky Court of Appeals determined that the trial court erred in finding that the lot owner's actions constituted ouster as a matter of law even though the appellate court agreed the fence was "clearly intended to impede access" and "exclude" the subdivision owners. *Id.* The Kentucky Court of Appeals explained that the lot owner, "as owners of the servient estate," was entitled to make changes to the property, including erecting a fence along the property, "so long as the change does not result in a material inconvenience to the rights of the owners of the dominant estate." *Id.* And because

- 15 -

the parties submitted conflicting evidence—the lot owner presented evidence that the subdivision owners continued to have access to the lot by other routes and the subdivision owners presented evidence showing that the fence created a "material inconvenience to their access"—the Kentucky Court of Appeals found that "this constitutes a genuine issue of material fact precluding summary judgment" as to whether the subdivision owners were ousted from the property. *Id.* at *7. So too here. The parties have submitted conflicting evidence concerning the nature, duration, and degree of Hubacek's alleged exclusion of K. Petroleum, and concerning whether Hubacek's actions caused "[material] interference with the right[s]" of K. Petroleum, 241 S.W.2d at 987, or a "material inconvenience to their access" to the wells, pipelines, and equipment on Hubacek's property, *Dickerson*, 2007 WL 2284790, at *7.

Still, K. Petroleum believes "the record clearly demonstrates" that Hubacek interfered with its rights under the lease such that her actions amount to ouster. [R. 19, p. 7]. For support, K. Petroleum relies on *Higdon v. Kentucky Gas Transportation Corp.* and *Central Kentucky Natural Gas Co. v. Huls*. Although those cases did not involve specific allegations of ouster, those courts, like *Dickerson*, discuss the black letter principles concerning the correlative rights between dominant and servient estate holders.

In *Higdon*, the Kentucky Court of Appeals[3] addressed an easement dispute where the easement document "did not contain language fixing its precise location, nor were details inserted fixing its width, depth or other specifications." 448 S.W.2d at 656–57. Under such a circumstance, where an easement or lease is silent on a disputed issue, courts consider that "reason and authority dictate that the rights obtained by the dominant owner are those necessary for the reasonable and proper enjoyment of the easement" and "[b]y *parity of reasoning, the owner of the servient estate*

_____

[3] Before 1976, the Kentucky Court of Appeals was the state's highest court.

- 16 -

*retains the right of full dominion and use of his land*, except so far as a limitation of his right is essential to the fair enjoyment of the easement." *Id.* at 657 (emphasis added). Stated another way, the "the dominant and servient owners have correlative rights and duties which *neither* may unreasonably exercise to the injury of the other." *Id.* (emphasis added). Based on the record evidence, *Higdon* does not compel the grant of summary judgment on this record, but rather presents a factual question concerning what is "necessary for [K. Petroleum's] reasonable and proper enjoyment of the easement" and whether Hubacek "unreasonably exercised her rights." 448 S.W.2d at 657.

The other case K. Petroleum cites, *Huls*, considered "the question as to whether [a building intended for use as a restaurant] is of such temporary nature as to create no [material] interference with the right of the owner of [an] easement to the free and unrestricted use thereof or actually does create such a burden as to be a violation of the rights conferred by the easement." 241 S.W.2d at 987. The Court first notes that *Huls* is so factually distinguishable from this case that it is inapposite. But to the extent it is relevant to the Court's analysis, the Kentucky Court of Appeals noted that "the granting of a right of way" entitles the owner thereof to "only the use necessary to enable it to exercise its rights" and that, "[a]uthorities dealing with this subject are almost unanimous in denial of a right . . . which would materially interfere with the free right to use the easement as contemplated by the parties." *Id.* Considering *Huls* and *Higdon* alongside the facts of this case, the Court finds factual questions concerning the relative right of the parties and burdens on their respective property estates. *Id.*

There is certainly evidence in the record that could allow a reasonable jury to find that Hubacek wrongfully excluded K. Petroleum from exercising its rights under the Lease. But, as discussed above, there is other evidence that could support a different conclusion—that Hubacek

did not wrongfully exclude or materially interfere with K. Petroleum's rights under the Lease. Given this conflicting record, a factfinder must determine whether, for how long, and to what extent Hubacek's actions constituted a "wrongful dispossession or exclusion" of K. Petroleum. *Crawford*, 186 S.W. at 512. And, in such a case where conflicting evidence has been presented, "whether there has or not been an ouster, is a question of fact which it is the province of the jury to decide." *Gill*, 47 Ky. at 186. Viewing the facts and evidence in the light most favorable to Hubacek, as the non-moving party, *Matsushita*, 475 U.S. at 587; *Lindsay*, 578 F.3d at 414, genuine issues of material fact exist with respect to Hubacek's alleged exclusion or dispossession of K. Petroleum.

### b. Intent to Effect Exclusion

As for the second element of an ouster claim, as stated, the Court finds that factual disputes exist concerning Hubacek's intent to exclude K. Petroleum from the property. In other words, there is evidence that would allow a reasonable jury to find that Hubacek lacked the "intent to effect such exclusion" of K. Petroleum with "knowledge of [its] claim of title." *Crawford*, 186 S.W. at 512; Ouster of Cotenant, 2 Tiffany Real Prop. § 449. Not only does Hubacek's May 4, 2021 letter—at which time she apparently believed K. Petroleum did not have a valid leasehold interest—indicate a willingness to still allow it "cordial access," [R. 19-1 (Disclosure Exhibit 8), p. 63], Hubacek explained in her deposition that once she learned K. Petroleum's lease had not expired, "all [she] want[ed] [was] just a notification" before K. Petroleum representatives came to service the wells so she could unlock the gates and let them in. [R. 20-1 (Deposition of Defendant Hubacek), p. 19]. Considering this record, the evidence does not conclusively demonstrate that Hubacek intended to exclude K. Petroleum; rather, a reasonable jury could find that Hubacek's

intent was simply to coordinate with K. Petroleum for the specific purpose of providing its representatives with reasonable access.

Moreover, while Hubacek does not dispute that she has two locked gates surrounding her property, she does dispute K. Petroleum's claim that she uses the locks to impede K. Petroleum's access. *See* [R. 19, p. 6] ("After monthly visits and being excluded by a locked gate, [K. Petroleum] eventually stopped attempting to access the property."). First, Hubacek explains that the gates are locked "due to her owning various livestock" and because "her neighbors are untrustworthy." [R. 20, p. 3]. Second, according to Hubacek, these locks were already on the gates prior to her purchase of the property, which, to a reasonable factfinder, could cast doubt on K. Petroleum's argument that Hubacek intended to oust it from the property by employing the locks. [R. 20-2 (Affidavit of Defendant Hubacek), p. 1]. Hubacek also offers that, during an early conversation in which Hubacek informed an unnamed K. Petroleum representative that she had purchased the property, the representative remarked, "Good now we can get to those wells," *id.* at 2, which supports Hubacek's contention that the locks were on the gates prior to her ownership. On this evidence, a reasonable jury could find that the locks were security measures that both Hubacek and the previous landowners felt necessary to contain their livestock and prevent theft by their allegedly "untrustworthy" neighbors. Put differently, this evidence creates a genuine issue of fact as to whether Hubacek intentionally ousted K. Petroleum from the property by locking the gates. *Crawford*, 186 S.W. at 512.

The Kentucky Court of Appeals reached a similar conclusion in *MCI Min. Corp. v. Stacy*, 785 S.W.2d 491 (Ky. Ct. App. 1989), when it found that a trial court erred in granting partial summary judgment to a co-tenant on an ouster claim where the "evidence principally consisted of allegations that [defendant] had been prevented by [plaintiff's] armed guards from entering [an]

area where actual mining was taking place" and the plaintiff's employee testified that "these actions were taken for safety reasons," not to exclude the co-tenant. *Id.* at 495–96. The appellate court explained that because "the factual question of whether [plaintiff] had performed an ouster of [defendant] was in dispute," the court should not have granted partial summary judgment." *Id.* at 496 (citations omitted). Consequently, the Kentucky Court of Appeals concluded that the trial court's summary judgment finding on the issue of ouster "was premature." *Id.* Here, the parties have submitted conflicting evidence concerning Hubacek's intent—K. Petroleum submits that she clearly intended to exclude it even after she knew or should have known it had a valid interest in the property, and Hubacek insists that she did in fact allow access during the relevant time period but simply requested reasonable advance notice.

At this stage, the Court must construe the evidence in the light most favorable to Hubacek, as the non-moving party, and draw all reasonable inferences from the underlying facts in her favor. *Matsushita*, 475 U.S. at 587; *Lindsay*, 578 F.3d at 414. *See Stacy*, 785 S.W.2d at 496 (reversing trial court's summary judgment ruling where "the factual question of whether [defendant] had performed an ouster . . . was in dispute"); *Dickerson*, 2007 WL 2284790, at *7 (reversing trial court's summary judgment order where parties presented conflicting evidence of ouster). As discussed above, an ouster is "a wrongful dispossession or exclusion of a party from real property who is entitled to be in possession thereof, *and must necessarily be accompanied with an intent to effect such exclusion*," *Crawford*, 186 S.W. at 512 (citation omitted), which may be shown "by express notice or *such overt acts of hostility* that a reasonably prudent person would be apprised of the denial of his rights." *Hoagland*, 238 S.W.2d at 136 (emphasis added). To be sure, K. Petroleum has presented evidence that could allow a reasonable jury to find that Hubacek ousted it from the subject property. But there is also evidence on which a jury could reasonably find that

Hubacek (1) did not wrongfully exclude K. Petroleum from the subject property and materially interfere with its rights, and (2) that her actions were not accompanied by the necessary intent or objective hostility to amount to an ouster under Kentucky law. Accordingly, the Court finds that K. Petroleum has not conclusively established its ouster claim as a matter of law, and summary judgment on that claim is inappropriate.

### ii.      Remaining Claims

Finally, K. Petroleum appears to argue that it is entitled to summary judgment on its conversion claim. [R. 19, p. 20]. K. Petroleum's two-paragraph argument is, however, insufficiently developed and difficult to follow.[4] Although the heading of the subsection is titled "Conversion," and it contains a brief discussion of that claim at the outset, it concludes with K. Petroleum's position that it should be entitled to summary judgment on Hubacek's Counterclaim with respect to the yellow pipeline, which the Court has already discussed. *See supra* Section III(A). To the extent K. Petroleum also seeks summary judgment on its conversion claim, it has failed to make that clear or offer any supportive authority or argument, and, as the Court has already noted, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Layne*, 192 F.3d at 566 (citing *McPherson*, 125 F.3d at 995–96); *Brindley*, 61 F.3d at 509 (observing that "[w]e consider issues not fully developed and argued to be waived").

---

[4] Along the same lines, but in an even more cursory fashion, K. Petroleum offers, "The claims in the Complaint as to breach of the lease would provide an alternative basis for liability." [R. 19, p. 2]. To the extent K. Petroleum seeks summary judgment on its claim for breach of the Lease in this single sentence, the Court declines to consider this wholly undeveloped argument. "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson*, 125 F.3d at 995–96 (citing *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir.1995)).

Even briefly considering the merits, K. Petroleum has not demonstrated it is entitled to summary judgment on its conversion claim. To succeed on a conversion claim, a plaintiff must demonstrate the following:

> (1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property.

*Madison Cap. Co., LLC v. S & S Salvage, LLC*, 765 F. Supp. 2d 923, 931–32 (W.D. Ky. 2011) (citing *Kentucky Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 632 n. 12 (Ky. 2005)). At no point has K. Petroleum even attempted to argue it has met each of these elements. Instead, on this issue, K. Petroleum concedes that "[n]o gas appears to have actually been converted by Defendant, Bernice Hubacek," [R. 19, p. 20], but maintains that a single email exchange between counsel, by which Hubacek requested a "gas line running from the well to her neighbors [sic] property be returned," [R. 19-5, p. 1], indicates Hubacek *attempted* to illegally convert the gas. Hubacek has, however, provided a sworn affidavit denying that allegation, *see generally* [R. 20-1 (Affidavit of Defendant Hubacek)], and, on this record, a factfinder, not this Court, must determine which evidence to accept as true. Consequently, K. Petroleum is not entitled to summary judgment on its conversion claim.[5]

## IV.   CONCLUSION

For all these reasons, **IT IS HEREBY ORDERED** as follows:

---

[5] Because the Court will deny K. Petroleum's motion for summary judgment with respect to its ouster and conversion claims, it follows that summary judgment is not appropriate on the issue of damages, including punitive damages.

1.      Plaintiff K. Petroleum, Inc.'s Motion for Partial Summary Judgment [**R. 19**] is **GRANTED in part** and **DENIED in part**.

    a.      Plaintiff K. Petroleum's request for injunctive relief is **DENIED** as moot.

    b.      Plaintiff K. Petroleum's regulatory compliance claims are **DISMISSED**.

    c.      Summary judgment is **GRANTED** in favor of Plaintiff K. Petroleum with respect to Defendant Hubacek's counterclaim concerning the yellow pipeline**.**

    d.      Summary judgment on Plaintiff K. Petroleum's ouster and conversion claims is **DENIED**.

    e.      Summary judgment on Plaintiff K. Petroleum's declaratory judgment claim is **DENIED without prejudice**. K. Petroleum may, in accordance with the instructions outlined above, file a renewed motion with respect to this claim within **twenty-one (21) days**. Normal response and reply times shall apply.

2.      This matter is **SET** for a telephonic status conference on **Wednesday, May 1, 2024, at 10:30 a.m.** before the Honorable Claria Horn Boom, United States District Judge, using the following dial-in information: 1-888-363-4735, Access Code 9522526#. Counsel should join the call five (5) minutes before it begins.

This the 29th day of March, 2024.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY